UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRANCE A. FURLINE,

        Plaintiff,        Case No. 1:10-cv-522

v.        Honorable Robert Holmes Bell

MICHIGAN TURKEY PRODUCERS
COOPERATIVE, INC. et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.       Factual allegations

Plaintiff Terrance A. Furline presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Bellamy Creek Correctional Facility (IBC), though the actions he complains of occurred while he was housed at the Lakeland Correctional Facility (LCF). He sues the Michigan Turkey Producers Cooperative, LCF Food Service Director J. Kevin O'Brien, LCF Warden Carol Howes, and MDOC Director Patricia L. Caruso.

According to the amended complaint, on March 15, 2010, Plaintiff was served hotdogs for dinner. After Plaintiff took a bite of his hotdog, he felt something sharp poking him in the throat. He started choking, and staff responded by starting stomach compressions. After Plaintiff swallowed the hotdog, LCF Lieutenant Harrelson found a metal object in the hotdog that was later identified as part of an 18-guage blood-drawing needle. Plaintiff was rushed to the emergency room in Coldwater, Michigan, where x-rays revealed a piece of needle in Plaintiff's stomach. Plaintiff was transported for emergency surgery that left 30 staples in his stomach and kept him hospitalized for a week. Plaintiff was asked to sign off on the liability of LCF, but he refused. He alleges that he was placed in segregation from March 21 to 29, 2010, after which Defendant Howes transferred Plaintiff to IBC. Plaintiff alleges that Defendant O'Brien failed to adequately inspect food shipments and failed adequately to investigate the incident. In addition, Plaintiff alleges that Howes abused her authority by placing him in administrative segregation and that, as Warden, she was responsible for the safety and operations of the facility. He further alleges that Defendant Caruso was responsible for the oversight of all facilities.

Plaintiff raises two counts in his amended complaint. First, he alleges that the Michigan Turkey Producers Cooperative subjected him to cruel and unusual punishment under the Eighth Amendment and that they produced a defective meat product. Second, he alleges that the remaining Defendants subjected him to cruel and unusual punishment by demonstrating indifference to food service sanitation and safety standards. Plaintiff seeks compensatory and punitive damages in the amount of $10 million.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Michigan Turkey Producers Cooperative

In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. The courts employ three tests to determine whether a private entity may be held liable as a state actor: the public-function test, the state-compulsion test, and the nexus test. *See Brentwood Acd. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-96 (2001); *S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553, 564 (6th Cir. 2007); *Lansing v. City of Memphis*, 202 F.3d 821, 828-30 (6th Cir. 2000).

"The public-function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain." *S.H.A.R.K.*, 499 F.3d at 564 (internal quotations omitted). Plaintiff makes no allegations that producing hotdogs or other food products is a traditional public function.

The state-compulsion test requires that the state exercise such a degree of coercive power or encouragement that the action of the private entity is legally deemed to be that of the state. *Id.* at 565. Again, Plaintiff fails to allege such coercion by the state in the production of hotdogs.

Finally, the nexus test examines whether there exists a sufficiently close nexus between the state and the challenged action. *Id.* The mere fact that LCF contracted with the Michigan Turkey Producers Cooperative to supply hotdogs shows nothing more than that the prison purchased some of its food from the company. Such a limited contractual arrangement does not create a sufficient entwinement between the public and private entities to warrant treating the company as a state actor. *Id.* at 565 (rejecting claim that a limited contractual arrangement between the private party and the state was a sufficient nexus to support treat the private party as a state actor).

In sum, Plaintiff has not presented any allegations by which the Michigan Turkey Producers' conduct could be fairly attributed to the State. Accordingly, he fails to state a § 1983 claim against the Michigan Turkey Producers' Cooperative.

### B. Supervisory Liability

Plaintiff fails to make specific factual allegations against Defendant Caruso, other than his claim that she failed adequately to oversee all MDOC operations and to ensure that all food safety requirements were met. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir.

2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendant Caruso engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

Moreover, even if Plaintiff had adequately alleged supervisory liability, he fails to state an Eighth Amendment claim against any of the MDOC Defendants.

### C. Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might

endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff alleges that Defendant O'Brien failed to adequately inspect the hotdogs and failed to ensure food safety by serving a defective hotdog. Plaintiff's allegations sound in negligence only. He makes no allegations that O'Brien or his supervisors knew or should have been aware of facts from which they could infer that a substantial risk existed that a needle or other foreign object would find its way into any hotdog or other food product, much less that such an object would create such a serious threat to a prisoner's health. Plaintiff therefore fails to demonstrate that O'Brien or any other MDOC Defendant was deliberately indifferent within the meaning of the Eighth Amendment.

Plaintiff also makes vague allegations that Defendant Howes abused her authority when she placed Plaintiff in administrative segregation for one week after his return from the hospital. Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)

(quoting *Rhodes*, 452 U.S. at 347; *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although Plaintiff undoubtedly was denied certain privileges as a result of his administrative segregation, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *8 (6th Cir. Aug. 23, 2000); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug.11, 1999). As a result, Plaintiff fails to state an Eighth Amendment claim against Defendant Howes.

### D. State-Law Claims

During the course of his allegations, Plaintiff appears to raise a product-liability claim under state law. To the extent that Plaintiff alleges violations of state law, this Court declines to exercise supplemental jurisdiction. Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits. *See Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of North Olmsted*, 927 F.2d 909, 917 (6th Cir. 1991); *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998). Accordingly, Plaintiff's state law claims are dismissed without prejudice.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).[1]

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: August 19, 2010                                       /s/ Robert Holmes Bell
                                                             ROBERT HOLMES BELL
                                                             UNITED STATES DISTRICT JUDGE

---

[1] In light of the Court's dismissal of the complaint, Plaintiff's motions for temporary restraining order (docket #3) and to appoint counsel (docket #4) will be denied as moot.